R. J. Prentiss & Co., Inc. *v.* United States[1]

[1] C. D. 49.

United States Customs Court, First Division

(Decided October 17, 1938)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Charles J. Miville*, special attorneys), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges

BROWN, Judge: This suit against the United States was brought at New York to recover customs duties claimed to have been illegally exacted on certain halibut liver oil imported from Norway which was classified by the collector of customs as a drug advanced in value under paragraph 34, Tariff Act of 1930, at 10 per centum ad valorem. The plaintiff claims that the merchandise at bar is entitled to a 20 per centum reduction in duties in accordance with the allowance made by the trade agreement with Cuba proclaimed on August 24, 1934, and published August 25, 1934, as T. D. 47232.

The merchandise in question was imported after the enactment of section 350 by the act of June 12, 1934, and after the proclamation of the trade agreement with Cuba entered into in accordance with the terms of said section 350, which reads as follows:

SEC. 350. (a) For the purpose of expanding foreign markets for the products of the United States (as a means of assisting in the present emergency in restoring the American standard of living, in overcoming domestic unemployment and the present economic depression, in increasing the purchasing power of the American public, and in establishing and maintaining a better relationship among various branches of American agriculture, industry, mining, and commerce) by regulating the admission of foreign goods into the United States in accordance with the characteristics and needs of various branches of American production so that foreign markets will be made available to those branches of American production which require and are capable of developing such outlets by affording corresponding market opportunities for foreign products in the United States, the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: *Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba: *Provided,* That the duties payable on such an article shall in no case be increased or decreased by more than 50 per centum of the duties now payable thereon.

(c) As used in this section, the term "duties and other import restrictions" includes (1) rate and form of import duties and classification of articles, and (2) limitations, prohibitions, charges, and exactions other than duties, imposed on importation or imposed for the regulation of imports.

The trade agreement so far as it purports to affect merchandise imported from Cuba consists of two columns of schedule 2. The first column refers to differentials granted to Cuba either changed in percentage or continued expressly or by blanket clause as is the case of this article in the percentage allowance allowed by the original Cuban Reciprocity Treaty of 1902. The second column relates to reductions from the rates of the Tariff Act of 1930 made upon particular articles when imported from Cuba. No change in the second column affects halibut liver oil, the importation here under consideration.

In the *Von Damm* line of cases previously decided the reductions sought to be generalized to other countries were the changes in column 2, while here the action simply continues the former differential of 20 per centum which in this case is sought to be generalized to importations from Norway. This difference prevents the *Von Damm* line of cases from being direct authority upon the case before us here.

The contention of the plaintiff in the case at bar is that section 350 (a) gives importations from Norway the benefit of the 20 per centum differential to Cuban merchandise.

The argument is, as summarized in plaintiff's brief, that—

\* \* \* in order to prevent the operation of the provision in Section 350 (a) that reductions of duty shall apply to all foreign countries, there must be not only an exclusive agreement with Cuba *but also one* which *modifies* the existing preferential customs treatment accorded to the particular goods under consideration when from Cuba.

again—

\* \* \* The preferential customs treatment of the merchandise at bar which existed under the previous Cuban treaty has not been modified by the present trade agreement. Therefore the trade agreement under which plaintiffs claim is clearly, under the language of the statute, not an exception to the rule generalizing the benefits of all trade agreements.

With that construction of section 350 we are unable to agree. The whole scheme of the Cuban Reciprocity Law of 1902 and of the so-called trade agreement law looks to exclusive preferential customs treatment to Cuba at the same time that concessions made in trade agreements with other countries are to be generalized to all other countries on the favored-nation principle.

By providing expressly that trade agreement changes in the Cuban preferential should not be generalized Congress does not by its language, as we read it, imply that if there is no change in the Cuban treaty preferential by a trade agreement that at once becomes generalized, and in effect ceases to be a preferential.

The language must be construed as a whole and it would have a self-contradictory effect if the plaintiff's construction viewing it piece-meal should prevail.

We therefore hold that, consistent with the plan of the original reciprocity treaty and with any trade agreement which does change the Cuban preferential, the language properly construed does not mean that merely failing to change the Cuban preferential, i. e., leaving it as the original 20 per centum on a particular article would destroy the preferential and generalize the reduction to other countries, such as Norway.

We also hold that the favored-nation clause of the commercial treaty with Norway proclaimed September 15, 1932, which was in force at the date of this importation expressly provides that the favored-nation principle—

\* \* \* shall not extend to the treatment which is accorded by the United States to the commerce of Cuba under the provisions of the commercial convention concluded by the United States and Cuba on December 11, 1902, or any other commercial convention which hereafter may be concluded by the United States with Cuba.

We hold that the trade agreement of August 24, 1934, here at issue was such a commercial convention with Cuba.

The favored-nation clause of the Norway commercial treaty acquires no further force or effect by reason of the language of the trade agreement law, section 350.

The protest must therefore be, and is hereby, overruled. Judgment will issue accordingly.